BREAUX, C. J.
This was an application for a writ of mandamus, filed by David J. Reid in the district court, against the registrar of voters, for the parish of Calcasieu, to compel him to place his (plaintiff’s) name on the registration book as a qualified elector.
*617 The registrar had refused to grant x>lain-tiff’s application .to carry his name on the roll, and this application is to compel him to enter his name on that roll.
The plaintiff is a citizen of the United States and a resident of the parish of Cal-casieu.
The registration book, containing the names of voters, was destroyed by fire on the 23d of April, 1910.
A few days thereafter the registrar gave official notice in the local papers to all voters to come forward and register anew.
This was done in order to afford an opportunity to the voters to register their, names anew.
Some time after his office had been opened, he gave notice that in 30 days prior to a special election he would close his office.
The special election referred to is to be held on the 14th day of July, 191.0.
The parties to this litigation seek an interpretation of the statutes in order, so far as possible, to avoid all illegalities and irregularities.
If the majority of the voters called upon to vote at the special election of July 14, 1910, so elects, bonds are to be issued, as a result of the election, aggregating $360,000.
Other elections are to be held, primary and general, in the near future.
It is probable that other voters, who had registered before the fire before mentioned, will also seek to exercise their franchise rights.
The district court made the mandamus peremptory, and directed the registrar to enter the name of the relator.
The registrar appeals.
The first objection urged (in argument only) by the respondent is one regarding the asserted failure of relator to make the required affidavit and take the required oath.
Our answer to the contention of respondent is that he has not alleged these asserted grounds in his answer. The answer contains the general averment that relator came to respondent’s office and applied to place his name on the roll of registration, which was refused.
Furthermore, the case is before us on an agreed statement of facts. No mention is made in this agreed statement of facts of a refusal on the part of the relator to taka an oath or to comply with any direction of the registrar.
As this objection is raised only in this written argument, it has every appearance of an afterthought.
Relator must have taken the first registration oath at the time that he registered; i. e., any oath required at the time that he registered originally.
As to any oath required of him (if any was required) when he appeared before the registrar the last time, the pleadings and the facts are silent on the subject. It is only mentioned in the brief.
There is really no issue before us as to either the failure to take an oath or to satisfy the registrar that he had previously registered at the time that he made his application to have his name placed on the roll.
Respondent admits that relator registered.
It must, in consequence, be held that he duly registered, in the absence of any showing to the contrary.
The next proposition of respondent is that a voter who fails to avail himself of the right to register cannot vote at an election held in accordance with Act No. 98 of 1908.
That is true.
It does not apply to the case at bar. Relator did not fail to register. We have seen that he was duly registered, only the destroying flames burnt the written evidence of registration.
The next proposition of respondent is substantially to the same effect.
*619 Respondent, in support of this last proposition, urges that relator was negligent, indifferent, and for that reason he must be held to hare voluntarily disfranchised himself.
This proposition is not sustained, for the right sought is public.
We will further state, in answer, the rule established should apply to all voters, without regard to laches or negligence, as there cannot be degrees of excellence in this matter or of indifference. It cannot reasonably be said to a voter, “Xour right to have your name placed on the roll will be recognized, because you have been active enough,” but to another, less active, or who may be guilty of laches, “Xou cannot register.”
That would not do. All must be treated alike — the active, or the lame, the halt, and the blind. All have the right, or none have it.
If they have it, it should be recognized, after reasonable inquiry in regard to the right of the voter to vote.
We may as well state here the office of registrar is not to be imposed upon, as respondent seems to apprehend (if decision should be against him), by all who may apply to x>lace their names on the registration book, without regard to whether they have previously registered or not. That officer should certainly be equal under the law to the duty of protecting his office from imposition.
We are decidedly of the opinion that relator has the right to have his name carried on the registration book.
The next contention of the respondent registrar is that the name of the voter cannot under the statute be placed upon the precinct register or voting list by the registrar or voter within 30 days of an election, citing Act No. 98 of 1908, in support of the contention.
We will begin by stating that the condition brought about by the destruction of rhe records is abnormal.
Still a voter who has previously registered should not be disfranchised, nor should the rule laid down tend to exclusion rather than inclusion of the voters who in good faith seek to exercise their rights as voters, although they may be a little tardy in their application.
There is no question of registration, as we have before stated.
But, having secured the right to vote, he should be permitted to retain the right.
Another ground of respondent is that, although the registration record had been totally destroyed by fire, no person ought to be permitted to vote under the statute on an oath or written affidavit on the day of the election.
That question is not before us. We have naught to do with acts on the election day.
We have no objection to state that in our opinion the contention that the precinct registration, or poll books for each precinct, must be furnished within 48 hours before the time fixed for the opening of the poll is sufficiently before us to justify us in expressing an opinion upon the subject.
We are inclined to the opinion that the names of voters who had previously registered cannot be placed on the registration books within the 48 hours preceding the opening of the polls.
This is rendered necessary, in order that the registrar may comply with the statute and send the necessary books and papers from his office to the different polls and precincts, or wherever they are needed under the law.
In conclusion: A voter who- has duly registered cannot be disfranchised on the ground that he has not had his name placed on the registration rolls 30 days before the election.
1-Ie is not to be treated and considered as *621 one who had not registered at all — as in this instance the relator had registered and secured the right which the statute provides.
He cannot, under the statute, have his name carried on the registration roll within the 48 hours just preceding the opening of the polls.
If he complies with the statute as now interpreted, he has all the rights on the day of the election of a voter who had had his name placed on the registration rolls 30 days before the day preceding the election.
Por reasons stated, the judgment appealed from is affirmed.